AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE: /S Bow Bottomly 07/24/2025

# UNITED STATES DISTRICT COURT
### for the

WESTERN _____ DISTRICT OF _____ OKLAHOMA

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| PROPERTY KNOWN AS: | ) | |
| 3225 SW 93rd St. | ) | Case No:  MJ-25-439-CMS |
| Oklahoma City, OK 73159 | ) | |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is(*check one or more*):
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(2)(A) | Receipt of Child Pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Marisol Flores, Federal Bureau of Investigation, which is incorporated by reference herein.
- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

Marisol Flores
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: __July 24, 2025_____

City and State: __Oklahoma City, Oklahoma__

_____
*Judge's signature*

CHRIS M. STEPHENS, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Mari Flores a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.    I have been employed as a SA with the FBI since May 2015, and I am currently assigned to the Oklahoma City Division.  I am currently assigned to investigate violations of federal law involving the exploitation of children.  I have gained expertise in conducting such investigations through everyday work in my current role as an SA with the FBI.

2.    As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.    I am currently investigating the online activities of Christian Soto, who is believed to reside at 3225 SW 93rd St., Oklahoma City, Oklahoma 73159 (the "**SUBJECT PREMISES**," as further described in Attachment A).  As shown below, there is probable cause to believe that Christian Soto ("Soto") possessed and received child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2)(A).  I submit this Application and Affidavit in support of a search warrant authorizing a search of the **SUBJECT PREMISES**.  Located within the **SUBJECT PREMISES**, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, including Soto's devices he uses for the purposes of possessing, viewing, receiving, distributing, or producing child pornography, and any other electronic devices to which Soto could have transferred files. I request authority to search the entire **SUBJECT PREMISES**, including the residential

1

dwelling, the curtilage of the residence, including, but not limited to storage buildings, vehicles located on the **SUBJECT PREMISES**, the persons in the **SUBJECT PREMISES** at the time of the search, and any computer (as broadly defined in 18 U.S.C. § 1030(e)) reasonably believed to belong to or have been used by Christian Soto located therein, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the **SUBJECT PREMISES**.

## **DEFINITIONS**

5.      The following definitions apply to this Affidavit and Attachment B:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text based online communications such as Internet fora and email.

b. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and

2

of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

d. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not

3

limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It

4

commonly includes programs to run operating systems, applications, and utilities.

i. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

j. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. §2256 (8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited

to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVD"s), Multi Media Cards ("MMC"s), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

m. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text transport Protocol ("HTTP").

## BACKGROUND OF THE INVESTIGATION

6.     The following paragraphs describe an investigation which Oklahoma City Homeland Security Investigations (HSI) initially began in March 2025. Due to HSI resources being directed towards other investigations at this time, Oklahoma City Federal Bureau of Investigations (FBI) was requested to assist with and continue the investigation in July 2025. Upon beginning the investigation, Oklahoma City FBI determined the subject, Soto, had been in a relationship with an FBI employee of the Oklahoma City that had ended negatively.  The employee has not and will not be involved in this investigation.

6

7.    Media Lab/Kik[1] Electronic Service Provider submitted a CyberTip to the National Center for Missing and Exploited Children (NCMEC) regarding Kik username, "joebidennnn69" distributing videos of Child Sexual Abuse Material (CSAM) on March 31, 2024, on the Kik application. Law enforcement determined the individual utilizing Kik username, "joebidennnn69" resided in South Carolina and was a state representative at the time. Subsequently, law enforcement obtained additional search warrants in their investigation to include a search warrant for the contents of the Kik account associated with Kik username, "joebidennnn69". During the review of said warrant return, investigators observed Kik username, "joebidennnnn69" sharing child pornography with Kik username, "randomcouplehere" on April 3, 2024. During the conversation, "joebidennnn69" asked "randomcouplehere", "Got more bad moms?", to which "randomcouplehere" replied, "Yes trade". The Kik users began sharing media files and continued to send messages to one another. Some additional messages include "randomcouplehere" saying, "I want more like the first one", and "joebidennnn69" responding, "Ok here's more […] With the boy and girl? […]". And "randomcouplehere" answering, "Girl sucking a boy". Kik username "joebidennnn69" sent over 50 files of child

---

[1] Kik Messenger, commonly called Kik, is a freeware instant messaging mobile app from the Canadian company Kik Interactive, available on iOS and Android operating systems. The application uses a smartphone's internet connection to transmit and receive messages, photos, videos, sketches, mobile web pages, and other content after users register a username. Kik is known for its features preserving users' anonymity, such as allowing users to register without the need to provide a telephone number or valid email address. However, the application does not employ end-to-end encryption, and the company also logs user IP addresses, which could be used to determine the user's ISP and approximate location.

pornography to Kik username "randomcouplehere" during their April 3, 2024, conversation.[2] Four of those child pornography files are described below:

One video file, named: 0eefb7d0-bd6b-4303-a037-f4cf5e5dcd48.mp4, is a 23 second duration video depicting a prepubescent light-haired female child wearing a shirt sitting in a chair. The child looks at the camera and a nude, adult male walks into the camera frame. The adult male has an erect penis and pushes his penis toward the child's face. The child begins using her hands to masturbate the adult male. The child stops and appears to either cough or gag. The adult male then begins masturbating with the tip of his penis in the child's mouth.

Another video with a file name of: 1a8a0003-486d-4f61-b843-19121e076f37.mp4, is a 21 second duration video depicting a prepubescent or pubescent, dark-haired female child wearing a tank top and shorts. An erect adult penis is in the camera angle at the beginning of the video. The child then begins performing oral sex on the adult male. The child rolls off the adult male and covers her face with her hands before the video ends.

Another video with a file name: 1cce6f2f-dd3d-4333-bb9c-11f87855604c.mp4, is a 1 minute, 36 second duration video depicting a prepubescent female child, nude, lying on her back. The video depicts an adult male inserting his erect penis in the child's anus. The adult male ejaculates on the child's genital area, including her anus, and then begins using his fingers to rub the ejaculate around the child's vaginal and anal areas. The adult male uses his fingers to open the child's genital areas toward the camera. The adult

---

[2] Law enforcement indicted the user of "joebidennnn69" in June of 2025, for distributing child sexual abuse material.

male then touches the child's genital areas with his penis before moving the camera away from the child and the video ends.

Another video with a file name: 1d1b4a97-769a-4024-a25c-1417c3d4535c.mp4, is a 1 minute 10 second duration video depicting a prepubescent female child, with dark hair. The child performs oral sex on an adult male. They are standing in a bathroom and the adult male directs the child on what to do while performing oral sex. The video ends while the child is still performing oral sex.

8.    On October 29, 2024, Kik, through its parent company MediaLab.ai, provided information regarding username "randomcouplehere" pursuant to an administrative subpoena served on October 11, 2024.  The following is a portion of the information provided by Kik:

Date: October 29, 2024

First Name: Random

Last Name: Couple

Email: howdoihackyou@gmail.com

Username: randomcouplehere

Registration_Timestamp:  2022/05/08 00:04:46

Login IP: 76.194.64.107   2024/10/22     21:30:18 UTC

Kik   also   provided   bind   records[3],   specifically,   IP   logs,   which   username "randomcouplehere" utilized from March 22, 2024, to April 24, 2024. One of the IPs

---

[3] Kik bind records refer to internal data entries used by Kik Messenger to link or "bind" a Kik account to a specific user identity.

captured by Kik numerous times on April 3, 2024, and during the time period "randomcouplehere" received child pornography files from "joebidennnn69", was: 76.194.64.107. An additional IP address utilized by "randomcouplehere" on March 24, 2024, was IP address: 70.182.81.160.

9.      On January 30, 2025, an administrative subpoena was served to AT&T Corp. to provide information pertaining to IP address: 76.194.64.107. On February 3, 2025, AT&T Corp. responded with the following information:

U-Verse

Billing Party

Account Number: 317199640

Account Name: Christian Soto

Billing Address: 3225 SW 93rd St., Oklahoma City, OK 73159-6530

Account Creation: 2021-11-09

Account Status: Open

Service Information

Name: Christian Soto

Service Address: 3225 SW 93rd St., Oklahoma City, OK 73159-0000

Contact Phone: (111) 111-0003

Contact Email: CHRISTIAN.I.SOTO.RN@GMAIL.COM

IP Usage

IP Address: 76.194.64.107

Start Date: 01/11/2024  3:46  PM UTC

End Date: 03/22/2024 07:49 PM UTC

10.     On or about January 30, 2025, an administrative subpoena was served to Cox Communications to provide information pertaining to IP address: 70.182.81.160.  On or about March 24, 2025, Cox Communications responded with the following subscriber information:

Name: CMDL/INTEGRIS Community Hospital

Address: 300 S Rockwell Ave Oklahoma City, OK 73128-2222

Telephone number: 855-270-5465

Email address/es:  tammy.harbet@commandlink.com

Account Start Date: 08/17/2022

Disconnect Date: N/A

11.     Soto's Oklahoma driver's license lists an address of 3225 SW 93rd St., Oklahoma City, Oklahoma 73159, the **SUBJECT PREMISES**. Current water utilities for 3225 SW 93rd St, Oklahoma City, Oklahoma, the **SUBJECT PREMISES**, are under the name Samantha Soto[4], with an email address of Christian.Soto.rn@gmail.com[5]. Cleveland County Assessor shows the current owner of 3225 SW 93rd St., Oklahoma City, Oklahoma, the **SUBJECT PREMISES**, as Christian Soto.

---

[4] Samantha Soto has been identified as a former spouse of Soto's. Samantha Soto and Christian Soto were married in 2013 and divorced in 2021.
[5] This is the same email address listed on the AT&T Internet Service return for IP: 70.182.81.160

12.    In March of 2025, Oklahoma City Police Department responded to a call[6] at 3225 SW 93rd St., Oklahoma City, Oklahoma, the **SUBJECT PREMISES**. Soto's home address on the OCPD report was, 3225 SW 93rd St., Oklahoma City, Oklahoma, the **SUBJECT PREMISES**.

13. On July 11, 2025, law enforcement installed a pole camera to capture the public view of 3225 SW 93rd St., Oklahoma City, Oklahoma, the **SUBJECT PREMISES**. Since its installation, law enforcement has observed a male matching Soto's description from Soto's driver's license photo and identifiers, arrive to and depart from the **SUBJECT PREMISES** in a white Toyota Tundra. On July 12, 2025, physical surveillance observed the same white Toyota Tundra parked at the **SUBJECT PREMISES**, bearing Oklahoma license plate CBA-468. The Toyota Tundra bearing Oklahoma license plate CBA-468 is registered to Jose Soto at 3225 SW 93rd St., Oklahoma City, Oklahoma 73159, with a secondary owner of Christian Ismael Soto. Jose Soto has been identified through open-source checks as Soto's father, who resides in a home located in Moore, Oklahoma.

14. Open-source information, specifically the professional networking website, LinkedIn, lists Soto, with a profile photo of himself, as a registered nurse with Integris Health in Oklahoma since 2017 to present. This is consistent with Soto's email address on the AT&T IP return, as well as Cox IP return showing service for Integris Community Hospital in Oklahoma City, Oklahoma.

---

[6] This call resulted in two Oklahoma state charges against Soto: One for felony Kidnapping and the other for felony Planning/Attempt/Conspire to Perform an Act of Violence. These charges are currently pending.

15.     Based on my training and experience, and the facts presented thus far, I believe Soto was the same individual using Kik username "randomcouplehere," who received and possessed CSAM.  I am seeking authorization to search the **SUBJECT PREMISES** where Soto resides and is likely storing CSAM.

16.     I am aware that computers and computer-related media are portable, and that evidence can be stored on media as small as a fingernail-sized memory card.  I have learned from other law enforcement officers who have executed search warrants in investigations of this nature, and my own training and experience, that computers and digital devices containing CSAM, and associated communications can be located in vehicles and on the persons of occupants located on the premises.  In addition, I am aware that people frequently transport their computers and cellular telephones on their person and in their vehicles.  Due to the portable nature of electronic storage devices and the ease with which they can be transported and hidden, I am requesting authority to search any vehicles on the **SUBJECT PREMISES**, as well as Soto's person if on the **SUBJECT PREMISES** when the search warrant is executed.

## ADDITIONAL CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

17.     The following indicates characteristics of child pornography collectors that I have learned through training, working multiple investigations involving child pornography, and from other law enforcement officers with a background in child pornography investigations:

a.  The majority of individuals who collect child pornography are persons who have a sexual attraction to children.  They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.  The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.  The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer to peer, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.  The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings

14

and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy and security of their homes or other secure location. Often, these individuals possess child pornography on multiple devices or mediums.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

18.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related

documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

16

19.     In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving CSAM where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

20.     Furthermore, I know that modern tablets (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "sync" with a traditional desktop or laptop computer. The purpose of syncing a tablet to a traditional computer is to back up data that is stored on the tablet so that it is not permanently lost if the portable tablet is lost or damaged. Also, tablet users may move files off the tablet and onto a computer to free up storage space on the tablet. Similarly, computer (*e.g.*, desktop computers, tablets, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization to seize all computers and digital file storage devices reasonably believed to belong to or have been used by Christian Soto at the **SUBJECT PREMISES**—not any particular computer.

21.     Finally, I know that many modern smart tablets and cell phones, including Apple and Samsung-brand tablets and cell phones, can be encrypted by the user using his finger and/or thumbprint or facial image to lock and unlock the device. Without the user's prints, the devices are difficult, if not impossible, for law enforcement personnel to unlock.

Accordingly, I am requesting that, to the extent law enforcement seizes any tablet or smart cell phone or other computer described in Attachment B during a search of the **SUBJECT PREMISES** (described in Attachment A), and if such device(s) features such encryption, then law enforcement may, while executing the search warrant at the **SUBJECT PREMISES**, use Soto's finger and/or thumbprint and/or facial image with any such encryption feature to attempt to unlock the device.

## **CONCLUSION**

22.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that Christian Soto, residing in the **SUBJECT PREMISES**, received child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and possessed child pornography, in violation of 18 U.S.C. 2252A(a)(5)(B).   Additionally, there is probable cause to believe that evidence of the criminal offenses is located in the **SUBJECT PREMISES**, and this evidence, listed in Attachment B to this Affidavit, incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses. As described in the probable cause section, there is probable cause to believe Christian Soto violated the aforementioned statutes.   I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

MARISOL FLORES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Signed and sworn before me this 24thday of July, 2025.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

19

**ATTACHMENT A**

**DESCRIPTION OF THE PREMISES**

**3225 SW 93rd St., Oklahoma City, Oklahoma 73159**

The **SUBJECT PREMISES**, 3225 SW 93rd St., Oklahoma City, Oklahoma 73159, is located within Oklahoma County, in the Western District of Oklahoma. The **SUBJECT PREMISES** is part of a single-family, two-story dwelling. The dwelling is constructed of reddish brick and white siding, with a white colored garage. 3225 is designated with the numbers "3225" in white lettering on siding above the garage.



The search of the **SUBJECT PREMISES** includes the residential dwelling and the curtilage of the residence, including, but not limited to, storage buildings, vehicles, any additional dwellings, vehicles, and appurtenances. The search of the **SUBJECT PREMISES** also includes the search of any persons found at or arriving to the **SUBJECT PREMISES** during the execution of the search. These persons include, but are not limited to, Christian Soto, whose date of birth is 05/XX/1990, and whose photo is depicted below:



**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

Contraband, evidence, fruits, and instrumentalities related to Christian Soto receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), in any form, including, but not limited to:

1.     To the extent they are reasonably believed to belong to or be used by Christian Soto: computer(s), as broadly defined in 18 U.S.C. § 1030(e), and all other digital file storage devices, including (but not limited to) desktop computers, smart phones, e-readers, tablets, thumb drives, SD cards, DVDs, compact discs, and external hard drives; all computer hardware, computer software; computer related devices and documentation; computer passwords and data security devices; videotapes; video recording devices; video recording players; and video display monitors that may be, or are used to visually depict child pornography or child erotica, display or access information pertaining to a sexual interest in child pornography, display or access information pertaining to sexual activity with children, or possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.     Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession or receipt of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, or receipt of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

3.     In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

4.     Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of the computer or by other means for the purpose of receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs

and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11.      To the extent they are reasonably believed to belong to or be used by Christian Soto: any and all cameras, film, videotapes or other photographic equipment capable of storing images or videos of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

12.     Any and all visual depictions of minors to see if they match images of minors in child pornography.

13.     Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.     To the extent they are reasonably believed to belong to or be used by Christian Soto: any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.     To the extent they reasonably believed to belong to or be used by Christian Soto: any and all equipment associated with routers, modems, and network equipment used to connect computers to the Internet.

If a smart cell phone or other computer, as described herein, is found that is subject to seizure pursuant to this warrant and requires access by using a finger or thumbprint or facial recognition to unlock the device, then, while executing the search warrant at the **SUBJECT PREMISES**, a law enforcement officer may press the finger or thumbprint of Christian Soto onto the device to try to unlock it or use his face to unlock the device via facial recognition.